UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD D. WOOD II on behalf of the KeHe Distributors, Inc. 401(k) Retirement Savings Non-Union Plan, and MAYA SHAW on behalf of the EXCO Resources, Inc. 401(k) Plan and all other similarly situated ERISA-covered employee pension benefit plans,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY,<br><br>　　　　　　　　　　Defendant. | Civil Action No. 15-1785<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)** |

## I.　　INTRODUCTION

1.　　Plaintiffs Leonard D. Wood II and Maya Shaw, by their attorneys, on behalf of the KeHe Distributors, Inc. 401(k) Retirement Savings Non-Union Plan, and the EXCO Resources, Inc. 401(k) Plan, respectively, and all other similarly situated ERISA-covered employee pension benefit plans, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, allege the following Complaint.

2.　　This is a class action against Prudential Retirement Insurance and Annuity Company ("PRIAC" or "Defendant").

1

3. PRIAC sells group annuity contracts to retirement plans. These contracts include "Stable Value Funds" ("SVAs"). The SVAs periodically credit a certain amount of income to retirement plans and the participants in such plans who invest their retirement plan accounts in SVAs. This income, generally expressed as a percentage of the invested capital, is determined pursuant to the Crediting Rate. Each Crediting Period, PRIAC sets a Crediting Rate for all money added to its SVAs in the Crediting Period.

4. PRIAC has the sole and exclusive discretion to determine the Crediting Rate for a given Crediting Period. PRIAC sets the Crediting Rate well below its internal rate of return ("IRR") on the invested capital it holds through the SVAs. Thus, PRIAC guarantees a substantial profit for itself. PRIAC does not disclose to its retirement plan clients and their respective participants the difference between its IRR and the Crediting Rate. Thus, PRIAC collects tens of millions of dollars annually in undisclosed compensation from the retirement plans and participants to whom it owes the highest duties known to the law, in violation of ERISA and statutory disclosure obligations.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

6. This Court has personal jurisdiction over Defendant because Defendant is headquartered and transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process. This Court also has personal

jurisdiction over Defendant pursuant to Fed. R Civ. P. 4(k)(1)(A) because it would be subject to the jurisdiction of a court of general jurisdiction in Connecticut.

7. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendant resides or may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides and does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### III.  PARTIES

8. Plaintiff Wood is a citizen and resident of Summerville, S.C. Plaintiff is a participant in the KeHe Distributors, Inc. 401(k) Retirement Savings Non-Union Plan ("KeHe Plan").

9. Plaintiff Shaw is a citizen and resident of Mesquite, Texas. Plaintiff is a participant in EXCO Resources, Inc. 401(k) Plan ("EXCO Plan"). All retirement plans in the Class are hereinafter referred to as the "Plans."

10. PRIAC is a legal reserve insurance company authorized under the insurance laws of Connecticut. Its principal place of business is Hartford, CT.

### IV.  SUBSTANTIVE ALLEGATIONS

12. Pursuant to its insurance business, Defendant offers and sells to retirement plans Group Annuity Contracts ("GACs"), which include SVAs managed through Defendant's general investment account ("GIA") and through its "Guaranteed Separate Accounts" ("GSAs"), which hold GIA investments.

3

13. The SVAs are offered to ERISA-covered Internal Revenue Code ("Code") Section 401(a) and 403(b) plans.

14. Plaintiffs invest their retirement assets in Defendant's SVAs through their Plans.

15. The SVAs are intended to provide investment income to Plan participants through which participant assets grow through interest and additional contributions.

### A. Defendant Is a Fiduciary

#### 1. Defendant Is a Fiduciary in Setting Crediting Rates.

16. Defendant, through its specialized professionals, developed the GAC terms through which the SVAs are provided to the Plans and their participants.

17. Defendant reserves to itself, under the GACs, substantial authority to protect its own interests at the expense of the Plans.

18. The terms of the GACs allow Defendant to defer payments and transfers if it determines, in its sole discretion, that there are severe economic conditions.

19. Defendant imposes substantial restrictions on transfers from the SVAs to other investment options. Any transfer from the SVAs to a competing investment option must be invested in a non-competing option for a minimum period of time. Defendant determines in its sole discretion the competing options. Defendant forces participants who want to transfer out of the SVAs to invest the most low-risk, stable value, portions of their retirement savings in much higher risk equity investments. Defendant reserves to itself the right to impose these restrictions in its sole discretion, when it is economically advantageous to Defendant.

20. Defendant imposes substantial penalties upon participants if an employer terminates a GAC, which include requiring either that participants' retirement assets be paid out over several years, or a second penalty on top of the first through what it calls a market value adjustment. This "market value adjustment" reduces the amount of any lump sum payment a participant may elect to receive in the event that he or she does not want to wait for a delayed payout. The market value adjustment is punitive and designed to retain the Plan's investment, and is not related to a true economic market value.

21. Participant and Plan deposits to the SVAs accumulate at an interest rate set and reset by Defendant (the "Crediting Rate").

22. Defendant sets and resets the Crediting Rate for the SVAs as often as every quarter.

23. Defendant sets the gross Crediting Rate (before the deduction of expenses) for the SVAs in its sole discretion, subject only to a minimum guaranteed Crediting Rate which, under certain SVAs, may be as low as 0%, before the deduction of expenses.

24. Upon information and belief, the cost of the guarantees to Defendant is minimal. The guarantees have no material value to the Plans and participants. This makes the restrictions alleged above even more punitive.

25. Upon information and belief, Defendant does not provide reasonable notice of a change in the Crediting Rate. Accordingly, a Plan cannot reasonably terminate a GAC if Defendant imposes an unfavorable Crediting Rate. Further, as alleged above, Defendant imposes substantial penalties on the Plans should the Plans attempt to terminate the GAC because of an unfavorable rate. Thus, plan fiduciaries are effectively precluded from making determinations concerning the reasonableness of the Crediting Rate, and from

replacing the GAC with another stable value fund when a Crediting Rate imposed by Defendant is unreasonable.

26.     The SVAs do not specify or require any formula or methodology for determining gross Crediting Rates, and Defendant does not disclose any actual formula or methodology used for determining the Crediting Rates.

27.     Defendant has complete discretion in setting the Crediting Rate above the guaranteed amount. Accordingly, Defendant, through its management and Board of Directors, has the complete and unfettered discretion to determine the Crediting Rate and, therefore, the earnings that are paid out on the SVAs.

28.     Defendant sets its own compensation by using its unfettered discretion to decide the Crediting Rate because it collects the difference between the Crediting Rate and the IRR, and does so without disclosure.

29.     The restrictions and penalties alleged above cause the Plans to be locked into disadvantageous Crediting Rates and GACs. In locking Plans into the SVAs, over which Defendant retains the authority to establish the Crediting Rates, Defendant acts as a fiduciary in setting the SVA Crediting Rate.

**2. Defendant Is a Fiduciary in Managing Plan Assets Deposited in SVAs.**

      **a. Defendant Is a Fiduciary in the Management of the GIA Deposits.**

33.     Participant contributions to the GIA, and the GSAs holding the GIA, are received by Defendant and deposited in Defendant's general account, where they are held, pooled and invested by Defendant with Defendant's other financial assets which the Defendant reports as "Invested Assets."

6

33. Defendant markets the SVAs exclusively as an investment vehicle which provides to the Plans a low volatility "stable value" investment option and, upon information and belief, markets SVA investment performance.

34. Defendant, under the GIA, provides the Plans with a guarantee of principal, a guaranteed minimum Crediting Rate, and a discretionary Crediting Rate above the guaranteed minimum rate. All of these elements are components of the GAC. Each must be independently examined to determine whether the GAC is a guaranteed benefit policy.

35. In setting the discretionary Crediting Rate, Defendant takes into account the investment experience of the Invested Assets in its general account. The Crediting Rate will rise or fall based on the investment experience of Defendant's general account. Because of this, and as alleged above, since any guarantee has no material value, all of the material investment risk of the GIA is allocated to the Plans.

36. Consequently, the Crediting Rate above the guaranteed minimum is a non-guaranteed component of the GAC. Since Defendant offers a discretionary Crediting Rate, the GAC is not a guaranteed benefit policy.

37. Defendant's Invested Assets which relate to the computation of the Crediting Rate and income allocated to the GACs are Plan assets under ERISA. Defendant is a fiduciary to the Plans in its discretionary handling and management of those Plan assets.

### b. Defendant Is a Fiduciary in the Management of the GSA Deposits.

39. Participant allocations to the GSA are received by Defendant and deposited and held by Defendant in Defendant's GSAs, where they are pooled and invested with the other financial assets in those accounts, including GIA assets.

40. The GSAs are insurance company separate accounts under 29 C.F.R. § 2510.3-101(h)(3), and the assets which the Plans deposit and Defendant holds in those accounts and income earned thereon are Plan assets under ERISA.

41. Defendant's discretionary handling and management of those GSA assets make Defendant a fiduciary of the Plans with regard to those assets, including the Plan assets held within the GIA which are, in turn, held by the GSA.

42. Because Defendant does not directly allocate the investment returns of the GSA to the Plans, it is managing the Plans' assets solely for its own behalf.

### c. Defendant Exercises Fiduciary Authority To Set Its Own Unreasonable Compensation in Violation of ERISA.

44. The GACs are Plan assets.

45. Defendant is a fiduciary concerning the GACs.

46. Plan fiduciaries may not set their own compensation under ERISA.

47. Defendant, through its management and Board of Directors, has the complete and unfettered discretion to determine the Crediting Rate and, therefore, the spread between the amount it earns on Invested Assets and the earnings that are paid out on the SVAs.

48. Defendant imposes an "expense" charge which is directly deducted from the SVAs, which has the effect of sharply reducing the net Crediting Rate.

49. In addition to these substantial fees, Defendant pays itself a "pricing spread" which is intended to cover investment management and administrative expenses, as well as expenses for risk and profit.

50. The "spread" is the difference between the actual earnings on investments made by the insurer (Defendant) and the Crediting Rate guaranteed to participants for that period.

51. Defendant earns direct and indirect compensation from the crediting spread on investment income connected to Plan deposits to the SVAs.

52. Defendant does not disclose to Plan participants or fiduciaries the spread compensation it pays itself, which spread compensation reduces the investment returns on the GACs.

53. Defendant earned approximately 3.9% on the Invested Assets within its general account in 2014, while only allocating as little as 2.15% on a Plan's SVA investments in that year. Therefore, in addition to all of the expenses it was paid as alleged above, Defendant earned undisclosed spread compensation of as much as 1.75% on certain Plans.

54. As of the third quarter, 2015, Defendant reports that it had $19 billion in its GIA. Therefore, Defendant, upon information and belief, will have earned in excess of $300 million in spread from the GIA and GIA assets held through GSAs in 2014.

55. Because Defendant in its sole fiduciary discretion sets the SVA Crediting Rate, and because the spread above the Crediting Rate is profit to Defendant, in exercising its fiduciary discretion to set the spread, Defendant exercises fiduciary discretion to set its own fees and profits related to the Plan deposits into the SVAs.

56. Defendant did not disclose the amount of the spread it earned on the SVAs to Plan fiduciaries. Defendant's non-disclosure of the amount of the spread gave it a competitive advantage over other Plan service providers who disclosed all of their fees.

9

### d.  Defendant Is a Party in Interest Receiving Undisclosed, Unreasonable Compensation Prohibited by ERISA.

64. Defendant is a party in interest to the Plans, and any compensation it receives from the Plans in connection with services provided to the Plans is prohibited by ERISA unless it is reasonable.

65. For GACs in effect as of and after July 1, 2012, Defendant is a "covered service provider" under 29 C.F.R. § 2550.408b-2(c)(1)(iii)(C) as it provides insurance services to the Plans through the GACs, including by virtue of its insurance guarantees of principal of the SVAs through the GACs.

66. In connection with its insurance services, Defendant reasonably expects to receive and receives indirect compensation in connection with receipt of the plan deposits to the SVAs for which insurance services are provided.

67. Defendant is also a "covered service provider" under 29 C.F.R. § 2550.408b-2(c)(1)(iii)(A) as it provides fiduciary services to the Plans by virtue of managing SVA assets through the GACs, and reasonably expects to receive and receives direct compensation in connection with its investment of the plan deposits to the SVAs for which fiduciary services are provided.

68. Defendant pays itself a "pricing spread" from this investment income which is intended to cover investment management and administrative expenses, as well as expenses for risk and profit.

69. This pricing spread constitutes indirect compensation as defined in 29 C.F.R. § 2550.408b-2(c)(1)(viii)(B)(2) in connection with Defendant's insurance services provided under the GACs, and direct compensation as defined in 29 C.F.R. § 2550.408b-2(c)(1)(viii)(B)(1) in connection with its fiduciary services under the GACs.

70. Under ERISA, compensation from a plan is not reasonable unless it is disclosed prior to entering into the contract for services.

71. In order for its compensation to be reasonable, Defendant was required to disclose to each of the Plans' "responsible plan fiduciary" the amount of the spread on the later of July 1, 2012, or the date the Plan purchased the GAC. For GACs in effect prior to July 1, 2012, Defendant was required to disclose the compensation it received in connection with the services provided to the Plans under the DOL regulations then in effect.

72. Defendant failed to adequately disclose to the Plans its SVA spread, and its receipt was therefore prohibited by ERISA as *per* se unreasonable.

## V. CLASS ACTION ALLEGATIONS

73. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Plans and class (the "Class") defined as follows:

> All ERISA covered employee pension benefit plans whose plan assets were invested in Prudential Retirement Insurance and Annuity Company's Group Annuity Contract Stable Value Funds within the six years prior to, on or after December 3, 2015.

74. The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, the Class includes hundreds of Plans.

75. Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendant as alleged herein, and all members of the Class are similarly affected by Defendant's wrongful conduct.

76. There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

   a. Whether Class members' defined contribution plan accounts invested in the GACs;

   b. Whether Defendant was a fiduciary of the Plans;

   c. Whether Defendant was a party in interest with respect to the Plans;

   d. Whether Defendant breached its fiduciary duties in failing to comply with ERISA as set forth above;

   e. Whether Defendant's acts as alleged above breached ERISA's prohibited transaction rules;

   f. Whether monies received and retained by Defendant were Plan assets;

   g. Whether an affirmative defense to a prohibited transaction claim applies and can be satisfied by Defendant; and

   h. Whether Defendant's acts proximately caused losses to the Plans and, if so, the appropriate relief to which Plaintiff, on behalf of the Plan and the Class, is entitled.

77. Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

78. Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members

of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

79. In the alternative, certification under Rule 23(b)(2) is warranted because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

80. In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

**FIRST CLAIM FOR RELIEF**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for Violations of**
**ERISA § 406(a)(C), 29 U.S.C. § 1106(a)(C)**

81. Plaintiffs re-allege and incorporate herein by reference all prior allegations of the Complaint.

82. ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), provides that a fiduciary shall not cause a plan to engage in a transaction if it knows that the transaction constitutes the payment of direct or indirect compensation in the furnishing of services by a party in interest to a plan.

83. Defendant is a party in interest under ERISA in that it provided services to each of the Plans. ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

84. Defendant is also a covered service provider.

13

85. Defendant received compensation in the form of spread and a specific expense charge in exchange for the services it provided to the Plans pursuant to the GACs and, therefore, the GACs violate this section of ERISA.

86. The only exception to the prohibition of such compensation is if it was for services necessary for the operation of a plan and such compensation was reasonable. ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2). Additionally, transactions after June 30, 2012 must meet the specific requirements 29 C.F.R. § 2550.408b-2.

87. The compensation paid to Defendant was not reasonable under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2), for the following reasons.

88. First, as alleged above, Defendant failed to make disclosures concerning such spread compensation.

89. As a result of Defendant's failure to make such disclosures, the spread income is, as a matter of law, unreasonable compensation within the meaning of ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2).

90. Second, the spread and expense compensation was excessive and unreasonable as a matter of fact in relation to the value of the services provided with regard to the SVAs in that the spread exceeded the agreed expenses.

91. When compared to the expenses related to competing funds, the total compensation for the SVAs was excessive.

92. Plaintiffs and the Class have been damaged in the amount of the spread Defendant took in connection with the SVAs.

91. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any

provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

92. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to Plaintiffs and the Class, including but not limited to the disgorgement by Defendant of its undisclosed, excessive, and unreasonable compensation.

## SECOND CLAIM FOR RELIEF
## ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for Violations of
## ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1)

95. Plaintiffs re-allege and incorporate herein by reference all prior allegations of the Complaint.

96. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), provides that a fiduciary shall not deal with plan assets in his own interest or for his own account.

97. In setting and resetting the Crediting Rates applicable to the SVAs and setting the amount of and keeping the spread, and in determining the level of its own compensation, Defendant deals with plan assets in its own interest or for its own account.

98. Plaintiffs and the class have been damaged in the amount of the spread Defendant took in connection with the SVAs.

99. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides

that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

100. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

101. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

102. Plaintiffs and the Class are entitled to recover the spread and other appropriate relief as a result of these violations.

### THIRD CLAIM FOR RELIEF
### ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for Violations of
### ERISA § 404, 29 U.S.C. § 1104

103. Plaintiffs re-allege and incorporate herein by reference all prior allegations of the Complaint.

104. In setting and resetting the Crediting Rates applicable to the SVAs, and setting the amount of and keeping the spread, and in determining its own compensation, Defendant has breached its fiduciary duties to the Plans and their participants.

105. Plaintiffs and the class have been damaged in the amount of the spread Defendant took in connection with the SVAs.

106. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and

beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

107. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

108. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

109. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) [ ] enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

110. Plaintiffs and the Class are entitled to recover the spread and other appropriate relief as a result of these violations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and request that the Court award relief:

A. Certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

B. Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA, with respect to the Plans;

C. Awarding, declaring or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper and such appropriate equitable relief as the Court may order, including damages, an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy;

D. Awarding pre-judgment and post-judgment interest; and

E. Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

DATED:  December 3, 2015

PLAINTIFFS

_____
Robert A. Izard (ct01601)
Mark P. Kindall (ct13797)
IZARD NOBEL LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
rizard@izardnobel.com
mkindall@izardnobel.com

Gregory Y. Porter, (*pro hac vice* forthcoming)
Ryan T. Jenny (*pro hac vice* forthcoming)
BAILEY & GLASSER LLP
1054 31st Street, NW
Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com