| | |
|---|---|
| LEONARD D. WOOD II on behalf of the KeHE Distributors, Inc. 401(k) Retirement Savings Non-Union Plan, and MAYA SHAW on behalf of the EXCO Resources, Inc. 401(k) Plan and all other similarly situated ERISA-covered employee pension Benefit plans, : : : : : : : : | : |
| Plaintiffs, : | CIVIL ACTION NO. 3:15-cv-1785 (VLB) |
| v. : : | |
| PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY, : : : | September 19, 2016 |
| Defendant. : | |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [DKT. NO. 26]**

I.   **Introduction**

The Plaintiffs, Leonard D. Wood and Maya Shaw bring this action, on behalf of their employers' 401(k) retirement plans, against Defendant Prudential Retirement Insurance and Annuity Company, alleging violations of the Employee Retirement Income Security Act of 1973 ("ERISA"), Sections 404 and 406, 29 U.S.C. §§ 1104, 1106.  Currently pending before the Court is Defendant's Motion to Dismiss.  For the reasons that follow, Defendant's Motion to Dismiss is GRANTED IN PART with respect to Plaintiffs' claims for non-fiduciary liability and DENIED IN PART with respect to all other claims.

1

II.     Background

The following facts and allegations are taken from the Complaint [Dkt. No. 1] and undisputed exhibits to Defendant's Motion to Dismiss [Dkt. No. 26, Exhs. A-G.]

Plaintiffs bring this action on behalf of their own 401(k) retirement plans and a class of similarly situated retirement plans (the "Plans") that invested in "Guaranteed Income Accounts" ("GIA") offered by the Defendant within six years of December 5, 2015. [Compl. ¶¶ 1-3.] Defendant offers and sells GIA to retirement plans as part of group annuity contracts. [Compl. ¶ 2; Def. Mot. to Dismiss, Exhs. B and C, "Guaranteed Income Fund Investment Addendum" ("Addenda").] GIA assets are invested in Defendant's Guaranteed Income Fund ("GIF"), and GIF assets are in turn invested in Defendant's general account.[1] [Compl. ¶ 2; Addenda § 1.1.] GIA are intended to provide investment income to

---

[1] Plaintiffs also reference Guaranteed Separate Accounts ("GSA") in their complaint. [*See* Compl. ¶¶ 12, 39-42, 54.] However, the contracts now before the Court state clearly that GIF assets are invested in the Defendant's General Account. [*See* Addenda § 1.1.] The KeHE 401(k) agreement contains a "Universal Separate Account E Investment Addendum," which states that the Defendant "segregate[s] Separate Account E assets from [its] other assets." [*See* Def. Mot. to Dismiss, Exh. B, "Universal Separate Account E Investment Addendum" § 1.1]. And the EXCO Resources 401(k) agreement contains no references to separate accounts whatsoever. [*See generally* Def. Mot. to Dismiss, Exh. C.] Pursuant to 29 C.F.R. § 2550.401c–1(d)(2), "an insurance company separate account is a segregated fund *which is not commingled with the insurer's general assets*" (emphasis added). Given the plain language of the Addenda, and the regulatory requirement that separate accounts not be comingled with an insurer's general assets, the Court credits Defendant's argument that "allegations concerning the 'GSAs' are entirely irrelevant to Plaintiffs' own ability to state a breach of fiduciary duty claim against" Defendant. [*See* Def. Memo. at 24-25.]

Plan participants through a guarantee of principal invested and a minimum rate of interest on investments.  [Compl. ¶¶ 12, 15.]  The GIA applicable interest rate is announced semi-annually, and remains "guaranteed against change" for six months after each announcement.  (Addenda § 1.3.)  Although the Defendant sets this declared interest rate at its "sole and exclusive discretion" in advance of each semi-annual period, [Compl. ¶¶ 3-4; Addenda § 1.3], and each Plaintiff has the option not to reinvest, the investment agreement provides that the rate must always be greater than or equal to 1.5 percent.  [Dkt. No. 26, Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") at 1, 6-7; Dkt. No. 41, Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 3; Def. Mot. to Dismiss, Exh. B, "KeHE Investment Agreement" §§ 2.1, 2.2.; Def. Mot. to Dismiss, Exh. C, "EXCO Investment Agreement" §§ 2.1, 2.2; Addenda §§ 1.3, 1.6, 1.8.]

While the interest rate is "guaranteed" to be at least 1.5 percent, Plaintiffs allege that Defendant sets the crediting rate "well below its internal rate of return . . . on the invested capital it holds through the [GIA]" and therefore "guarantees a substantial profit for itself."  [Compl. ¶ 4.]  Defendant does not disclose to its retirement plan clients and their participants the difference between the crediting rate and its internal rate of return.  *Id.*  Plaintiffs therefore allege that Defendant "collects tens of millions of dollars annually in undisclosed compensation from the retirement plans" in violation of its fiduciary duties under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.  *Id.*

Primarily at issue in Defendant's Motion to Dismiss is whether Defendant is a fiduciary with respect to GIA under ERISA. The Defendant argues that GIA are "guaranteed benefit policies" under ERISA § 401(b)(2), 29 U.S.C. § 1101(b)(2), and therefore are not "plan assets" for the purpose of triggering fiduciary responsibility. [*See* Def. Memo. at 2, 11-13 (citing ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)).] Defendants also argue that Plaintiffs' allegations relating to non-fiduciary liability should be dismissed because they do not seek appropriate equitable relief. *See id.* at 25.

Plaintiffs counter that pursuant to *John Hancock Mutual Life Insurance Co. v. Harris Trust and Savings Bank*, 510 U.S. 86 (1993) ("*Harris Trust*"), the GIA are not guaranteed benefit policies. [*See* Pl. Opp. at 10.] Plaintiffs claim that because GIA contributions accumulate interest at variable rates of return, and may be terminated at Defendant's discretion, the GIA do not provide a benefit "the amount of which is guaranteed." *Id.* at 10-12. Plaintiffs also argue that Defendant exercises discretion over Plan assets, and that the GIF contract's terms are "so onerous that they effectively preclude Plans and participants from rejecting the Crediting Rate." *Id.* at 24-27.

### III.   Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and

4

conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting Iqbal, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun &

Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider documents of which the Plaintiffs had knowledge and relied upon in bringing suit, *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), so long as these documents are "integral" to the complaint and the record is clear that no dispute exists regarding the documents' authenticity or accuracy. *Faulkner v. Beer*, 463 F.3d 130, 133-35 (2d Cir. 2006).  While Plaintiffs did not attach the Plans' annuity contracts to the Complaint, the terms of these contracts' Guaranteed Income Fund Investment Addenda are referenced throughout, and the parties do not dispute that the exhibits to Defendant's Motion to Dismiss are accurate or authentic.  [*See, e.g.*, Pl. Opp. at 25-26.]  The Court's reliance on these exhibits is therefore appropriate.

   IV.   Analysis

      A. Guaranteed Benefit Policy Exemption

   Pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a benefit plan fiduciary to the extent she "exercises any discretionary authority or discretionary control respecting such plan or exercises any authority or control respecting management or disposition of its assets."  ERISA § 401(b)(2), 29 U.S.C. § 1101(b)(2), exempts guaranteed benefit policies from restrictions imposed on ERISA fiduciaries, and defines a "guaranteed benefit policy" as:

> "an insurance policy or contract to the extent that such policy or contract provides for benefits the amount of which is guaranteed by the insurer. Such term includes any surplus in a separate account, but excludes any other portion of a separate account."

The Supreme Court's decision in *Harris Trust* provides that this guaranteed benefit policy exemption must be construed narrowly. *Harris Trust*, 510 U.S. at 96 ("The guaranteed benefit policy exclusion from ERISA's fiduciary regime is markedly confined . . . . Congress has specifically instructed, by the words of limitation it used, that we closely contain the guaranteed benefit policy exclusion."). "[T]o determine whether a contract qualifies as a guaranteed benefit policy, each component of the contract bears examination." *Id.* at 106. "A component fits within the guaranteed benefit policy exclusion only if it allocates investment risk to the insurer." *Id.* "Such an allocation is present when the insurer provides a genuine guarantee of an aggregate amount of benefits payable to retirement plan participants and their beneficiaries." *Id.*

Defendant argues that Plaintiffs' claims relating to the GIA should be dismissed because the GIA are guaranteed benefit plans under ERISA § 401(b)(2). Specifically, it argues that the GIF and GIA offer participants a "genuine guarantee of an aggregate amount of benefits" because the Defendant guarantees the principal amounts invested in the GIF and sets a minimum interest rate of 1.5 percent. [Def. Memo. at 14-15.] In doing so, Defendant claims that it allocates risk entirely to itself. *Id.* However, *Harris Trust* counsels that "funds in excess of those that have been converted into guaranteed benefits [in the form of traditional annuities]" can only fall within the guaranteed benefit policy exemption where they "guarantee a reasonable rate of return on those funds" and "provide a mechanism to convert the funds into guaranteed benefits at rates set by the contract." *Harris Trust*, 510 U.S. at 106. The contracts at issue

7

in this case do not set the rates at which funds in GIA may be used to purchase traditional annuities, and whether 1.5 percent is a reasonable rate of return cannot be determined without further factual development.[2]

Several other District Courts have considered whether contracts for accounts similar to Defendant's GIA give rise to fiduciary authority under ERISA. The most similar was discussed in *Lau v. Metropolitan Life Insurance Co.*, No. 15-cv-09469 (PKC) (S.D.N.Y. Aug. 22, 2016).  As in the instant action, the plaintiffs alleged that defendant insurers breached their fiduciary duty and engaged in prohibited transactions under ERISA by retaining the "spread" between the crediting interest rate and investment returns on stable value accounts resembling GIA.  *See id.* at 5.  The Southern District of New York held that it could not determine at the motion to dismiss stage, "that a guaranteed rate of return of 1.5 percent is reasonable under the circumstances" or that "the formula for calculating the Crediting Rate did not allocate some investment risk to the Plans' participants."  The District of Colorado likewise held that it could not determine at the motion to dismiss stage that the guaranteed crediting rate of 0% in that case

---

[2] Defendants claim that they assume significant investment risk because current 3-Month Treasury-Bill interest rates and national averages of 6-Month Certificate of Deposit interest rates are low. [*See* Def. Memo. at 17 n.4.] However, the relationship between these interest rates and the GIA or GIF interest rate is not clear from the face of the Addenda.  *Cf. Lau,* No. 15-cv-09469 (PKC), at 8 ("MetLife offers no explanation as to why such rates should serve as a benchmark for reasonableness of the rate of return on a contract of the sort at issue in the present case.  The Court can discern no correlation between the three-month Treasury Bill rates, for example, and the guaranteed rate of return.")  At this stage of litigation, Plaintiff's allegation that Defendant's crediting rate is unreasonably low relative to Defendant's profit from the "spread," [*see* Compl. ¶ 53], must be accepted as true, and is sufficient to overcome Defendant's Motion to Dismiss.

8

was "reasonable," that the defendant's discretionary authority did not extend to management of plan assets, or that the contract's discretionary rate model did not allocate risk to plan participants invested in the fund sufficient to foreclose applicability of fiduciary duties under ERISA. *See Teets v. Great-West Life & Annuity Insurance Co.*, 106 F. Supp. 3d 1198, 1203 (D. Colo. 2015). Other courts have come to similar conclusions. *See, e.g., Rozo v. Principal Life Financial Insurance Co.*, No. 4:14-cv-000463, 2015 WL 9920548, at *2 (S.D. Iowa Sept. 21, 2015) (holding that that the court was required to treat the plaintiff's allegation that risk remained with investors as true at the motion to dismiss stage, and denying the defendants' motion on that ground); *Austin v. Union Bond & Trust Co.*, No. 3:14-CV-00706-ST, 2014 WL 7359058, at *4 n.2 (D. Or. Dec. 23, 2014) (dismissing claims on other grounds, while accepting that stable value accounts in which the investor—rather than the insurer—owns the underlying assets were not guaranteed benefit policies).

Both parties cite *Healthcare Strategies, Inc. v. ING Life Insurance & Annuity Co.*, Civil Action No. 3:11-CV-282 (JCH), 2012 WL 162361 (D. Conn. Jan. 19, 2012), in support of their respective positions. However, the parties in that case did not dispute that the product at issue provided "a guaranteed return to individual retirees" and the court therefore did not fully consider to whom investment risk was allocated. The Guaranteed Accumulation Accounts in *Healthcare Strategies* also had important differences from GIA. Chiefly, at the time of their initial contribution, participants enrolled in accounts with fixed terms at fixed interest rates, with liberal options for disposition upon the expiration of a fixed term. *See*

Dkt. No. 27-3, Exhibit 1 to Motion to Dismiss, *Healthcare Strategies*, Civil Action No. 3:11-CV-282 (JCH), at 10-11, 13-14, 21.  By contrast, participants enroll in the GIA for an indefinite amount of time and it is unclear from the contracts how participants may withdraw assets.  The contracts state that *plans* may terminate GIF investments at any time, and that *participants* may transfer GIA assets to non-competing funds for at least 90 days, but they do not provide other information regarding how participants might be permitted to exit a GIA upon receiving notice of an unfavorable interest rate.  [*See* Addenda § 1.8.]  Plaintiffs allege, and plan documents do not refute, that these non-competing funds universally contain "higher risk equity investments."  [Compl. ¶ 19.]

Finally, the benchmark and methodology used to set the interest rate, the prevailing rates for comparable investments, and other factors bearing on the reasonableness of the interest rate and the allocation of risk, are fact specific and render dismissal premature now at the motion to dismiss stage.  *See Lau*, No. 15-cv-09469 (PKC), at 8-9.  For the foregoing reasons, the complaint plausibly alleges that the GIA and GIF investors bear investment risk notwithstanding the fact that the interest rate is set prior to the beginning of each semi-annual investment period.  The Court therefore DENIES the Defendant's Motion to Dismiss on the basis that it is not a fiduciary under ERISA and is shielded from liability under the fiduciary exemption.

### B. Equitable Relief for Non-Fiduciary Liability

Defendant has also asked the Court to dismiss Count I of the Complaint, which Defendants argue seeks legal remedies unavailable under ERISA §

502(a)(3), 29 U.S.C. 1132(a)(3). Section 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan." At issue in Defendant's motion is whether the restitution or disgorgement of profits sought by Plaintiffs is "appropriate equitable relief." [*See* Def. Memo. at 25.]

Equitable relief under Section 502(a)(3) "is limited to those categories of relief that were *typically* available in equity during the days of the divided bench." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016). "[M]onetary relief for all losses [a] plan sustain[s] as a result of [an] alleged breach of fiduciary duties" is a "classic form of *legal* relief." *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993) (holding that despite "danc[ing] around the word [restitution]," plaintiffs sought compensatory damages, which were unavailable against a non-fiduciary who knowingly participated in the breach of an ERISA fiduciary duty). Similarly, "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation [is] not typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 (2002). By contrast, a plaintiff may "seek restitution *in equity* . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. Such clarity does not exist here.

The Court agrees that the what the Plaintiffs seek here, namely, "disgorgement by Defendant of its undisclosed, excessive, and unreasonable compensation" is a form of legal relief for a breach of what they assert to be a non-fiduciary liability under ERISA Section 502(a)(3). "[A]lmost invariably, suits seeking 'to compel the defendant to pay a sum of money to the plaintiff are suits for money damages.'" *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (quoting *Great West,* 534 U.S. at 213). Here, Plaintiffs do not seek to recover the loss of property in the Defendant's general fund that can be traced to particular funds or property in Defendant's possession. Rather, they seek compensation for monetary losses in connection with a non-fiduciary's role in the breach of an ERISA fiduciary duty. This remedy is not available under Section 501(a)(3). The claim for equitable relief is therefore DISMISSED.

V.     Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN PART with respect to Plaintiffs' claims for non-fiduciary liability. Count I is therefore DISMISSED. Defendant's Motion to Dismiss is DENIED IN PART   with respect to all other claims.

                                IT IS SO ORDERED.

                                _____/s/_____
                                Hon. Vanessa L. Bryant
                                United States District Judge

Dated at Hartford, Connecticut: September 19, 2016