UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD WOOD II and<br>MAYA SHAW, on behalf<br>of themselves and all others<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PRUDENTIAL RETIREMENT<br>INSURANCE AND ANNUITY<br>COMPANY,<br><br>    Defendant. | CIVIL ACTION NO.<br>3:15-cv-1785 (VLB) |

**MEMORANDUM OF DECISION DENYING PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION [DKT. NO. 67]</u>**

I. <u>Introduction</u>

The Plaintiff, Maya Shaw, individually and on behalf of all other persons similarly situated, brings this action against Defendant Prudential Retirement Insurance and Annuity Company ("PRIAC"), alleging violations of the Employee Retirement Income Security Act of 1973 ("ERISA"), Sections 404 and 406, 19 U.S.C. §§ 1104, 1106. Currently pending before the Court is Plaintiff's Motion for Class Certification [Dkt. No. 67]. Plaintiff seeks certification of the following class:

> All ERISA-covered employee benefit plans whose plan assets were invested in Prudential Retirement Insurance and Annuity Company's Guaranteed Income Fund ("GIF") and/or Principal Preservation Separate Account ("PPSA") on or after December 3, 2009.

For the reasons that follow, Plaintiff's Motion is DENIED.

1

II.  **Background**

PRIAC offers investment options within their Group Annuity Contracts called the Guaranteed Income Fund ("GIF") and the Principal Preservation Separate Account ("PPSA"). [2/15/2017 Grove Decl. ¶ 5]. The principal distinction between GIF and PPSA is that GIF funds are held in PRIAC's general account and PPSA funds are held in a separate account for investors alone. *Id.* Plaintiff's 401(k) plan, the EXCO Resources, Inc. ("EXCO") 401(k), elected to include only the GIF as an investment option. *Id.*

The GIF and PPSA plans guarantee participants' principal and accumulated interest at crediting rates that are declared in advance for six-month periods, and are not subject to change within those six-month periods. [Tigges Decl. ¶ 11]. PRIAC's Rate Setting Board meets at least four times per year to set crediting rates for newly funded plans, and twice a year to reset the crediting rates for existing plans. [2/15/2017 Grove Decl. ¶ 4]. While Plaintiff has offered evidence that "most pools" used the same crediting rate, Defendants counter that plans invested in GIF and PPSA benefit from a "wide range" of crediting rates, and that PRIAC provides distinct rate changes to at least 20% of its rate pools. [*See, e.g.*, Exh. O to Pl. Mot. at PRUDENTIAL_0001436; 2/15/2017 Grove Decl. ¶ 18; Exh. 9 to Boyle Decl.]. The crediting rates are subject to a contractually mandated minimum interest rate, which for over 90% of the plans within Plaintiff's proposed class is 1.5 percent. [Kindall Decl. ¶¶ 3-5; Tigges Decl. ¶ 11; 2/15/2017 Grove Decl. ¶ 47]. The remaining plans have minimum rates of up to 3 percent or are set

based on a National Association of Insurance Commissioners formula. [2/15/2017 Grove Decl. ¶ 47].

Since 2005, PRIAC has used eight different contract forms for new GIF and PPSA accounts. *Id.* ¶ 48. However, older forms remain in place for funds established prior to 2005. *Id.* ¶ 49. These forms have differing language regarding transfer restrictions. *Id.* GIF and PPSA contract terms also differ based on whether customers participate in full service plans or in investment only plans. *Id.*

Plaintiffs allege that Defendant sets the crediting rate "well below its internal rate of return . . . on the invested capital it holds" through the GIF and PPSA and therefore "guarantees a substantial profit for itself." [Compl. ¶ 4]. Defendant calculates, but does not disclose to its retirement plan clients and their participants the difference between the crediting rate and its internal rate of return. [*Id.*; Exh. O to Pl. Mot. at PRUDENTIAL_0001436]. Plaintiffs therefore allege that Defendant "collects tens of millions of dollars annually in undisclosed compensation from the retirement plans" in violation of its fiduciary duties under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. *Id.*

III. <u>Legal Standard</u>

In ruling on a motion for class certification, the Court generally accepts the factual allegations of the Complaint as true. *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 168 (D. Conn. 2006) (citing *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978)). However, it may also

consider evidence that a plaintiff has submitted in support of her motion for class certification, and evidence that a defendant has submitted in opposition to the motion for class certification. *Id.* While a judge must resolve factual disputes relevant to each Rule 23 requirement, "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom., In re IPO*, 483 F.3d 70 (2d Cir. 2007)

Class certification is governed by Federal Rule of Civil Procedure 23. To be certified, the class must satisfy all four prerequisites set forth in Rule 23(a), and must meet at least one of the factors set forth in Rule 23(b). *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). A "district court may not grant class certification without making a determination that all of the Rule 23 requirements are met." *In re IPO*, 471 F.3d at 40.

IV. <u>Analysis</u>

  A. <u>Rule 23(a) Factors</u>

Rule 23(a) provides that (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); the claims or defenses of the representative parties must be "typical of the claims or defenses of the class" (typicality); and the representative parties must "fairly and adequately protect the interests of the class" (adequacy of the representation). Fed. R. Civ. P. 23(a); *see also Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 60 (D. Conn. 2011); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999), *overruled on other*

4

grounds, *In re IPO*, 471 F.3d at 40.  "The party seeking to certify a class bears the burden of demonstrating numerosity, commonality, typicality, and adequacy." *Caridad*, 191 F.3d at 291.

Defendant does not challenge the numerosity prerequisite set forth in Rule 23(a).  The Court therefore considers only whether the Plaintiff's proposed class satisfies requirements for commonality, typicality, and adequacy of representation.

1. Commonality

Class members must have claims that "depend upon a common contention," that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Courts have found that 'the test for commonality is not demanding' and is met so long as there is at least one issue common to the class."  *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004) (quoting *Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 625 (5th Cir. 1999)).  "A court may find a common issue of law even though there exists some factual variation among class members' specific grievances."  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (internal quotation marks and citation omitted).

Plaintiff argues that the case involves the following common questions of law and fact:  (1) whether Defendant was a plan fiduciary; (2) whether Defendant breached its fiduciary duties by setting the crediting rate and retaining the

5

"spread" between the crediting rate and rate of return on invested assets; (3) whether this spread was comprised of plan assets; (4) whether Defendant's acts caused plan losses; and (5) the appropriate relief to which class members are entitled. [Pl. Br. at 13]. Defendants articulate the issues in this case slightly differently, and argue that the resolution of this case requires the Court to consider only whether PRIAC acted as a fiduciary in setting GIF and PPSA crediting rates and (1) whether PRIAC breached this duty by setting the crediting rates unreasonably low relative to PRIAC's earnings; or (2) whether the contracts' termination provisions rendered any guaranteed benefits illusory. [Def. Br. at 20].

The parties' disagreement on the issues to be decided is of no moment because, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)). Plaintiffs assert that this case's common questions are capable of classwide resolution because the plan contracts at issue are "materially identical" in that they all provide a minimum guarantee, they all provide for crediting rates in excess of the guarantee, and they all give PRIAC the authority to set crediting rates at its own discretion. [Pl. Br. at 13]. Defendants counter that the proposed class is comprised of plans with which PRIAC negotiated individualized agreements, and therefore lack commonality with respect to

6

several contractual features, including (1) the guaranteed minimum rates of return; (2) the crediting rates; (3) the duration of plan investment; and (4) plan compensation.

Whether PRIAC is a fiduciary with respect to the GIF and PPSA depends on whether the guaranteed minimum provides a "reasonable rate of return." *See Wood v. Prudential Ret. Ins.*, No. 3:15-CV-1785 (VLB), 2016 WL 5940946, at *3 (D. Conn. Sept. 19, 2016). The Court cannot evaluate these minimums in a vacuum, but must consider their reasonableness in context. Reasonableness will depend upon the terms of individually negotiated contracts, and may depend on such considerations as the fees a plan agrees to pay to PRIAC for the administration of the GIF or PPSA, or the intended purpose of the fund within a plan's overall investment portfolio. With respect to fees, Defendant has offered evidence that asset charges are individually negotiated with plan fiduciaries based on the specific plan services that the fiduciaries want PRIAC to provide, and how the costs of those services should be paid by the plan. [2/15/2017 Grove Decl. ¶ 15]. Additionally, a reasonable guaranteed minimum for an investment vehicle used solely for the purpose of maximizing investment returns will be different than the reasonable minimum for one intended as a plan's hedge against investment risk. Therefore, even if it is true that 90% of PRIAC's GIF and PPSA plans have a guaranteed minimum of 1.5%, the question of whether this is a reasonable rate of return will not generate a common answer throughout the proposed class. Whether PRIAC is a fiduciary is therefore not suited for classwide resolution, at least with respect to Plaintiff's proposed class.

Determining whether PRIAC breached any fiduciary duty is similarly unsuited to classwide resolution. As with the question of whether the GIF minimum offered a "reasonable rate of return," variables among plans render unmanageable any attempt to reach classwide conclusions regarding the reasonableness of the spread. These variables include individually negotiated asset charges, frequent and non-uniform readjustment of crediting rates among rate pools, and the fact that new or large funds are often given more favorable crediting rates. The difficulty of reaching classwide conclusions regarding whether PRIAC acted as a fiduciary or breached any fiduciary duty therefore prevents the Court from finding that the commonality prerequisite has been met.

### 2. Typicality

Rule 23(a)(3) requires that the "the claims or defenses of the representative parties [be] typical of [those] of the class." The Supreme Court has observed that "the commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality. By contrast, unique defenses that threaten to

become the focus of the litigation may preclude such a finding." *Sykes v. Mel Harris and Assoc., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

Plaintiff argues that her claims are typical of the class because she was a participant in an ERISA plan which offered the GIF as an investment option. [Pl. Br. at 15]. She further argues that variations between plans with respect to crediting rates, investment expenses, and spread income do not defeat typicality because these differences only affect the allocation of damages between plans, which can be addressed using mechanical formulas. [Pl. Br. at 15-16]. Significantly, crediting rates, investment expenses, and spread income are not the only differences among plans. The plans also differ with respect to termination or withdrawal policies depending on whether the plan is a full-service or investment-only client. [*See* 2/15/2017 Grove Decl. ¶¶ 47, 54-55]. Plaintiff's position with respect to the EXCO plan's termination policies therefore will not be typical of the plan as a whole. As with commonality, the Court cannot find that Plaintiff's claims are typical of the class, because the proposed class is so varied that the resolution appropriate for the Plaintiff may differ from that suitable to participants in other ERISA plans administered by PRIAC.

Even if the diversity of guaranteed minimums, asset charges, crediting rates, and withdrawal and termination policies were insufficient to bar a finding of typicality with respect to the GIF, such a finding would be improper with respect to the PPSA. This Court has already stated that the Plaintiff's allegations relating to separate accounts were "entirely irrelevant to Plaintiff['s] own ability to state a

. . . claim," because "the EXCO Resources 401(k) agreement contains no references to separate accounts whatsoever." *Wood*, 2016 WL 5940946, at *1 n.1.

Additionally, Judge Bolden considered this issue with respect to a plaintiff whose plan featured a separate account stable value fund, but not a general account stable value fund, and determined that the plaintiff did not have class standing to bring any claims concerning general account products. *See Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 3:16-CV-1251, 2017 WL 2909714, at *5 (D. Conn. July 6, 2017). The reverse is also true. A participant, like Ms. Shaw, whose plan features only a general account stable value fund does not have class standing to bring claims on behalf of plans with separate account products. Unlike investments in an insurer's general account, gains and losses within separate accounts cannot be offset by the performance of other investments. They therefore "do not involve the same set of concerns." *Dezelan*, 2017 WL 2909714, at *8. Plaintiff has therefore failed to show that her claims or defenses are typical of those of the proposed class.

### 3. Adequacy

The typicality and adequacy of representation requirements also tend to merge, at least with respect to whether the named plaintiff adequately represents the interests of the class. *Falcon,* 457 U.S. at 157 n.13. However, the adequacy prong is more concerned with whether a "plaintiff's interests are antagonistic to the interest of other members of the class." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and

10

the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (internal citation omitted). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (internal quotation marks and citation omitted).

Defendants argue that by virtue of the fact that she is a plan participant and not a fiduciary, Plaintiff is not an adequate representative of plan class members. Plaintiff counters that numerous decisions from other courts have found that participants in one ERISA plan can adequately represent the interests of *participants* in other ERISA plans, and cites at least one case in which plan participants were permitted to represent *plans* in which they did not participate. *See, e.g., Wit v. United Behavioral Health*, 317 F.R.D. 106, 116 (N.D. Cal. 2016) (certifying a class of members of health benefit plans, with members as class representatives); *Santomenno v. Transamerica Life Ins. Co.*, 316 F.R.D. 295, 298 (C.D. Cal. 2016) (certifying a class of retirement plans that used a common plan product, with plan participants as class representatives); *Teets v. Great-W. Life & Annuity Ins. Co.*, 315 F.R.D. 362, 374 (D. Colo. 2016) (certifying a class of plan participants who had invested in a particular fund, with one participant as class representative); *Otte ex rel. Estate of Reynolds v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 53 (D. Mass. 2011) (certifying a class of plan participants, with a plan participant as class representative); *Cress v. Wilson*, No. 06CIV2717JGK, 2007 WL 1686687, at *10 (S.D.N.Y. June 6, 2007) ("[A]n individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of

11

the plans."). In light of these cases, the Court is disinclined to hold categorically that a plan participant cannot represent the interests of *participants* in plans of which the representatives are not members.

However, the Court is persuaded that plans' interests may be adverse to participants' interests, such that the Plaintiff would inadequately represent the interests of the *plans* as a whole. While participants must choose among the funds offered within their plans, plan administrators choose the funds themselves from the universe of investment options available on the wider market. These choices are motivated by different considerations—while a participant might choose to invest in the GIF in order to maintain the principal in her investment account, an administrator must consider not only how the GIF will allow participants to diversify their investment portfolios, but must also negotiate favorable rates and fees. If the Court finds that the GIF lacked a reasonable guaranteed minimum or that its termination provisions were unduly restrictive, participants could find fault with plan administrators for choosing to include the GIF as their plan's only "safe" investment option.

Defendant also attacks the Plaintiff as an inadequate class representative on the grounds that she is no longer a member of the EXCO plan and therefore lacks standing to seek prospective injunctive relief. In her reply memorandum, Plaintiff disclaims her request for injunctive relief, and argues that any such request would only ask the Court to order the Defendant to conform its future behavior to the law, and would therefore be unnecessary. While an injunction generally is not needed where its sole command is to conform future behavior to

the law, courts can and do issue injunctions with specific instructions as to *how* a defendant may comply with the law. *See, e.g.*, *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (stating that while "an injunction must be more specific than a simple command that the defendant obey the law," an injunction "identifying the ways in which the defendants must alter their behavior to comply with those laws" would have been appropriate). Because she is unable to seek prospective injunctive relief and has not persuaded the Court that injunctive relief would never advance the interests of any class member or subclass, the Plaintiff cannot adequately represent the interests of current plan participants.

### B. Rule 23(b) Factors

Because the Plaintiff has failed to satisfy the commonality, typicality, and adequacy of representation prerequisites, the Court need not determine whether the proposed class could satisfy any of the Rule 23(b) factors. However, in the interest of judicial efficiency the Court will address the requirements of Rule 23(b).

#### 1. Rule 23(b)(1)

Rule 23(b)(1) provides that certification is appropriate where "prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

13

"An action may be maintained under Rule 23(b)(1)(A) when the defendant is required by law or by necessity to treat all members of the class alike." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 321 (S.D.N.Y. 2003) (citing *Amchem*, 521 U.S. at 614). "Rule 23(b)(1)(B) permits a class action to be maintained if a congeries of individual actions would 'impair or impede' the interests of other members of the putative class." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992) (citing *Robertson v. Nat'l Basketball Ass'n*, 556 F. 2d 682, 685 (2d Cir. 1977)).

While "[c]ourts considering whether to certify ERISA breach of fiduciary duty claims have consistently . . . conclude[ed] that subsection 23(b)(1)(B) is the most appropriate basis for class certification," *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y), these courts have done so primarily when confronted with a class of participants in one retirement plan. *See, e.g., Id.* (certifying a class of beneficiaries of one company's 401(k) plan); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 563 (D. Minn. 2014) (certifying a class of participants in one company's 401(k) plan); *Paschal v. Child Dev., Inc.*, No. 4:12-CV-0184 KGB, 2014 WL 112214, at *1 (E.D. Ark. Jan. 10, 2014) (certifying a class of employees of one organization offering insurance plans and a 403(b) retirement plan). Here, where the proposed class is comprised of thousands of individual retirement plans—many of which have different guaranteed minimums, crediting rates, and fees—class members would not be treated alike and individual adjudications would not necessarily be dispositive of the interests of other members. Certification under Rule 23(b)(1) is therefore inappropriate.

### 2. Rule 23(b)(2)

Rule 23(b)(2) states that certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rules 23(b)(1) and 23(b)(2) are suited to classes who "seek 'indivisible injunction[s] benefitting all [their] members at once.'" *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11-CV-282 JCH, 2012 WL 10242276, at *11 (D. Conn. Sept. 27, 2012). Claims for monetary relief may not be certified under Rule 23(b)(2) if "the monetary relief is not incidental to the injunctive or declaratory relief." *Dukes*, 564 U.S. at 360. Litigation that requires complex individualized determinations as to the amount of monetary damages is not suited certification under Rule 23(b). *See Amara v. Cigna Corp.*, 775 F.3d 510, 523 (2d Cir. 2014).

Plaintiff's proposed class is too diverse to permit resolution by indivisible injunction. The Court will not be able "to calculate, for the entire class, the total amount of Defendant's improper profits," [Pl. Reply at 12], without first considering each plan's reasons for offering the GIF as an investment option, the substance of each plan's negotiations with PRIAC, and what a reasonable guaranteed minimum for each plan would be under these circumstances.

### 3. Rule 23(b)(3)

Rule 23(b)(3) requires the Court to assess whether "issues of law or fact common to the class members predominate over any questions affecting only individual members," and whether a "class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Considerations relevant to finding superiority include the following: '(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.'" *Sykes*, 285 F.R.D. at 288 (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).

For the reasons set forth in Section IV.A.1., the Court cannot conclude that common interests predominate within Plaintiff's proposed class. Plaintiff also cannot show that a class action featuring its proposed class would be superior to other methods of adjudication, because she has "not shown that it will be unnecessary to conduct highly individualized, fact-intensive inquiries," *Spann*, 219 F.R.D. at 324. Requiring the Court to conduct such inquiries into thousands of plans would be unmanageable. "A class action is not suited to litigation so heavily dependent on questions requiring individualized proof." *Id.* The parties have not proposed subclasses, and therefore the Court does not address the propriety of dividing the proposed class into subclasses. *Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14-15 (2d Cir. 1993) (holding the district court was not required to carve out appropriate class and subclasses on its own initiative.)

V. **Conclusion**

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Class Certification [Dkt. No. 67].

                IT IS SO ORDERED.

                _____/s/_____
                Hon. Vanessa L. Bryant
                United States District Judge

Dated at Hartford, Connecticut:  August 4, 2017